UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TRAMAINE ANTON HIBBERT,

                    Petitioner,

-vs-                                                    Case No.  6:10-cv-1902-Orl-19GJK
                                                                 (6:08-cr-247-Orl-19GJK)

UNITED STATES OF AMERICA,

                    Respondent.
_____

# ORDER

This case involves a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) filed by Tramaine Anton Hibbert.  On July 15 and August 8, 2011, the Court conducted an evidentiary hearing on whether counsel failed to file a notice of appeal after Petitioner asked him to do so.  The Court further heard argument as to the remaining issue of whether the Government breached the plea agreement by failing to contact the State Attorney's Office.  After consideration of the testimony and the law, claims one and two are denied.

## I.    *Procedural Background*

Petitioner was charged in a four-count indictment with: (1) conspiracy to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii) and 846; (2) possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine hydrochloride, in violation of 21

U.S.C. § 841(a)(1), (b)(1)(B)(ii) and 18 U.S.C. § 2; (3) possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and (4) knowingly possessing a firearm in furtherance of the drug trafficking offense charged in Count I, in violation of 18 U.S.C. §§ 924(c) and 2. (Criminal Case No. 6:08-cr-247-Orl-19GJK, Doc. No. 1)[1] Petitioner entered into a written plea agreement and pled guilty to Counts I, III, and IV of the Indictment. (Criminal Case Doc. Nos. 45 & 46.) The Court accepted the plea and adjudicated Petitioner guilty as to Count I, III, and IV. (Criminal Case Doc. No. 59.)

On December 15, 2009, a sentencing hearing was conducted, and Petitioner was sentenced to a term of 120-months imprisonment on Count I, a term of 120-months imprisonment on Count III, all such terms to run concurrent, and a term of 60-months imprisonment on Count IV, such term to run consecutive to the sentences for Counts I and III. (Criminal Case Doc. No. 69 at 2.) Count II was dismissed pursuant to the plea agreement. (*Id.* at 11.)

At the sentencing hearing, the Court orally explained to Petitioner his right to appeal, (Doc. No. 7-2 at 14-15), and Petitioner signed a written Acknowledgment of Right to Appeal confirming his understanding of the right to appeal, the ten-day deadline for appealing, and the steps for taking an appeal. (Criminal Case Doc. No. 68.) On January 12, 2010, the Court entered an Order ("Ten Day Order") noting that ten days had elapsed since the entry of judgment and that no notice of appeal had been filed. (Criminal Case Doc. No. 70.) The Ten Day Order directed Petitioner to file within ten days a declaration

---

[1] Criminal Case No. 6:08-cr-247-Orl-19GJK will be referred to as "Criminal Case."

stating whether the election not to file a notice of appeal was informed and voluntary. (*Id.*) The Ten Day Order further stipulated that failure to respond as directed would be deemed an acknowledgment by Petitioner that the decision not to appeal was an informed and voluntary choice. (*Id.*) Petitioner did not file a declaration pursuant to the Ten Day Order.

On December 10, 2010, Petitioner timely filed a motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255, asserting that trial counsel rendered ineffective assistance by failing to object to the Government's alleged breach of the plea agreement and by failing to file a notice of appeal upon Petitioner's request. (Doc. No. 1.) The Government filed a response in opposition, (Doc. No. 7), and Petitioner filed a reply to the response (Doc. No. 9), and an affidavit in support of his Motion (Doc. No. 10).

On May 23, 2011, the Court entered an order concluding that counsel satisfied the duty to consult with Petitioner about appealing to the extent such duty existed. (Doc. No. 13 at 9-10.) The Court reserved ruling on Petitioner's remaining claims pending an evidentiary hearing on Petitioner's claim that trial counsel rendered ineffective assistance by failing to file a notice of appeal as requested by Petitioner. On July 15 and August 8, 2011, the Court conducted evidentiary hearings on the claim.

## II.     *July 15 and August 8, 2011 Evidentiary Hearings*

Petitioner testified that at the time he entered his plea in this Court, he had a state charge pending in Brevard County, Florida for possession of a firearm by a convicted felon. (Doc. No. 27 at 11.) According to Petitioner, Edwin Ivy ("Ivy"), his attorney in his federal case, told him that if he entered a plea in this Court, the state charge would be dropped.

*Id*. at 11-12.

Petitioner testified that he told Ivy prior to his sentencing hearing that his state charge remained pending. *Id*. at 14. Petitioner said that Ivy spoke to Assistant United States Attorney ("AUSA") Emmett Jackson Boggs who said that he had contacted the state attorney about the pending state charge and was waiting on a response. *Id*. at 14-15. Petitioner stated that he believed that the state charge was going to be dropped based on his conversation with Ivy at the sentencing hearing. *Id*. at 16-17. However, Petitioner acknowledged that he knew that AUSA Boggs had stated at the plea hearing that he could not make the State drop the charge against him. *Id*. at 16.

Petitioner affirmed that he was advised of his right to appeal after he was sentenced and that he did not ask Ivy to file an appeal on that date. *Id*. at 17. Petitioner maintained, however, that he called Ivy and sent Ivy a letter within the ten-day appeal period wherein he requested Ivy to file an appeal. *Id*. at 18-19. Petitioner also testified that he met with Ivy at the jail between January 1 and 6, 2010, within the ten-day appeal period, raised the matter of his still pending state charge, and requested Ivy to file an appeal. *Id*. at 18. Petitioner said that Ivy told him that he would speak to AUSA Boggs regarding the state charge. *Id*. at 20. Petitioner testified that he never heard anything further from Ivy after the meeting at the jail. *Id*.

Petitioner said that he received an order from the Court advising him that ten days had lapsed and no notice of appeal had been filed. *Id*. at 22. Petitioner maintained that he received the order approximately two days before he spoke to Ivy at the jail. *Id*. at 22-23.

Petitioner stated that he went to federal prison after he was sentenced and was brought back to Brevard County in April 2010 for his state criminal proceeding. *Id.* at 24-25. Petitioner testified that he had an attorney in his state case and he advised his attorney that he had entered a plea in the federal court. *Id.* at 25. Petitioner further admitted that he told the state prosecutor about his federal plea to which the state prosecutor responded that he knew about Petitioner's federal plea, that the state charge was filed first, and the state planned to prosecute it. *Id.* at 25-26.

Petitioner said that he did not ask his attorney in his state case to contact AUSA Boggs regarding his federal plea, although he wanted his attorney in his state case to pursue the Government's promise to contact the state attorney. *Id.* at 27-28. Nevertheless, he subsequently told his attorney to drop the matter and decided to enter a plea in the state case so that he could receive a concurrent sentence to his federal sentence and return to federal prison. *Id.* at 28.

Ivy testified that he discussed with Petitioner the matter of filing an appeal before Petitioner entered the plea. *Id.* at 31. Ivy stated that he reviewed with Petitioner the appeal rights he was giving up by entering the plea and he told Petitioner that he would have ten days to file an appeal after he was sentenced. *Id.* at 32. Ivy maintained that on the date Petitioner was sentenced, after the sentence was imposed, he advised Petitioner that he did not think there were any issues to appeal and asked Petitioner if he wanted to appeal. *Id.* at 32-34. Ivy said that Petitioner told him he did not want to appeal any matter. *Id.* at 32.

Ivy testified that he did not receive a letter or call from Petitioner after he was

sentenced. *Id.* at 35. Ivy also did not recall meeting with Petitioner at the jail after he was sentenced and was almost certain that he did not do so. *Id.* Ivy maintained that he was certain that he did not speak to Petitioner after the Order was issued regarding the lapse of the ten-day appeal period. *Id.*

Ivy noted that he likely would have submitted a CJA voucher for billing purposes had he met with Petitioner at the jail. *Id.* at 41-42. A CJA bill was entered into evidence, which showed that Ivy signed the CJA voucher on December 28, 2009, and the form was received by the Court on the same day. The CJA form did not include a bill for a visit to the jail. However, the CJA voucher was dated prior to the time period in which Petitioner contended that Ivy visited him at the jail. *See* Doc. No. 25.

Ivy testified that he later spoke with Petitioner's state attorney and advised the attorney to contact AUSA Boggs regarding the plea. *Id.* at 40- 41. Ivy maintained that Petitioner's attorney said that Petitioner had decided to enter a plea on the state charge in order to receive a concurrent sentence. *Id.* at 41. As such, the attorney in Petitioner's state court case did not pursue the issue of the federal plea with AUSA Boggs. *Id.*

Ivy remembered that Petitioner was concerned about his state case. *Id.* at 37-39 Nevertheless, he did not recall telling Petitioner that the state charge would be dropped if he entered a plea in his federal case. *Id.* at 37-39. Ivy testified that Petitioner understood that the Government agreed to contact the state attorney regarding the state charge, but Ivy did not know if the Government ever contacted the state attorney. *Id.* at 37-40.

AUSA Boggs advised the Court that he did not speak with the state attorney directly

about Petitioner's case. *Id.* at 50. AUSA Boggs indicated, however, that someone else in

his office may have contacted the state attorney about Petitioner's federal plea. *Id.* at 50-51.

At his counsel's request, Petitioner was provided an opportunity to file the jail

records for the relevant time period, but did not do so. Likewise, the Government was

given an opportunity to file evidence regarding whether someone from the AUSA's Office

notified the state attorney of Petitioner's federal plea. No such evidence, however, was

filed. AUSA Boggs did file evidence establishing that the state attorney knew about

Petitioner's federal plea prior to Petitioner entering a plea in his state proceeding. *See* Doc.

No. 26.

## III.    *Standard of Review*

Section 2255 provides federal prisoners with an avenue for relief under limited

circumstances:

> A prisoner in custody under sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the sentence
> was imposed in violation of the Constitution or laws of the United States, or
> that the court was without jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by law, or is otherwise
> subject to attack, may move the court which imposed the sentence to vacate,
> set aside or correct the sentence.

28 U.S.C. § 2255. If a court finds a claim under Section 2255 to be valid, the court "shall

vacate and set the judgment aside and shall discharge the prisoner or resentence him or

grant a new trial or correct the sentence as may appear appropriate." *Id.* To obtain this

relief on collateral review, however, a petitioner must clear a significantly higher hurdle

than would exist on direct appeal. *See United States v. Frady*, 456 U.S. 152, 166 (1982)

(rejecting the plain error standard as not sufficiently deferential to a final judgment).

IV.    *Analysis*

    A.    *Ineffective Assistance of Counsel for Failure to File Requested Notice of Appeal*

Petitioner asserts that counsel rendered ineffective assistance by failing to file a notice of appeal despite being asked to do so. To prevail on a claim of ineffective assistance of counsel, Petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. These two elements are commonly referred to as the performance and prejudice prongs, respectively. *Reece v. United States*, 119 F.3d 1462, 1464 n.4 (11th Cir. 1997). If Petitioner fails to establish either prong, the Court need not consider the other prong in finding that there was no ineffective assistance of counsel. *Strickland*, 466 U.S. at 697.

It is well-settled that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citations omitted). In such a case, prejudice is presumed, and the petitioner is entitled to a new appeal without any further showing. *See id.* at 483 ("The . . . denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right, . . . demands a presumption of prejudice."); *id.* at 485 (noting that *Flores-Ortega* was consistent with *Rodriguez v. United States*, 395 U.S. 327, 329-30 (1969), where a defendant who instructed counsel to perfect an appeal thereby

objectively indicated his intent to appeal and was entitled to a new appeal upon counsel's failure to perfect an appeal without any further showing); *Peguero v. United States*, 526 U.S. 23, 28 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit."). These rules apply with equal force when the petitioner waives some but not all of his appellate rights through a plea agreement. *Gomez-Diaz v. United States*, 433 F.3d 788, 793-94 (11th Cir. 2005).

In the instant case, Petitioner's testimony conflicts with Ivy's testimony. Both parties testified that Petitioner did not advise Ivy to file an appeal on the date of his sentencing. Petitioner, however, maintained that he sent Ivy a letter asking him to file an appeal and that he told Ivy at the jail between January 1 through 6, 2010, that he wanted to appeal. In contrast, Ivy testified that he was virtually certain that he did not meet with Petitioner at the jail after he was sentenced nor did he receive a letter or phone call from Petitioner requesting him to file an appeal after Petitioner's sentencing.

Assessing the credibility of witnesses is reserved for the Court. *See Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1559 (11th Cir. 1988) ("Assessing the weight of evidence and credibility of witnesses is reserved for the trier of fact."). After carefully considering the evidence and viewing the witnesses and their demeanor while testifying, the Court finds the testimony of Ivy credible and the testimony of Petitioner not credible on this issue.

In determining that Ivy's testimony is more credible, the Court notes that some of Petitioner's testimony at the evidentiary hearing is contradicted by Petitioner's statements at his plea hearing. For instance, at the evidentiary hearing, Petitioner testified that Ivy told

him that his state charge would be dismissed after he entered a plea in his federal case based on the Government's agreement to contact the state attorney's office. However, the plea transcript indicates that AUSA Boggs stated at the plea hearing that he would contact the state about Petitioner's plea, but the state could still prosecute the offense if it chose to do so, and Petitioner affirmed that he understood this. (Criminal Case Doc. No. 80 at 13.) Thus, contrary to Petitioner's testimony at the evidentiary hearing, the record establishes that he was aware that the state could still prosecute him.

Furthermore, consistent with Ivy's testimony that he does not believe that he met with Petitioner after sentencing is the fact that Ivy did not submit any bill for a visit to the jail. Moreover, Petitioner's testimony regarding when the meeting at the jail occurred casts doubt on the veracity of his testimony. Petitioner maintained that he met with Ivy at the jail between January 1 through 6, 2010, approximately two days after he received the Ten Day Order. The Ten Day Order was not entered and mailed, however, until January 12, 2010. Additionally, the Ten Day Order noted that ten days had elapsed since Petitioner's sentencing, no notice of appeal had been filed, and failure to notify the Court that he had not elected to forego filing an appeal would be deemed an acknowledgment that he voluntarily chose not to file an appeal. (Criminal Case Doc. No. 70.) Despite his testimony that he received the Ten Day Order before meeting with Ivy, Petitioner never contacted the Court prior to filing the instant Section 2255 motion, approximately twelve months after his sentencing, to determine whether an appeal had been filed. Petitioner also was given multiple opportunities to submit records from the jail establishing that Ivy in fact visited

-10-

the jail during the relevant time period.  Nevertheless, Petitioner did not do so

In sum, the Court concludes that Petitioner's testimony is not credible and Ivy's testimony is credible.  Further, Ivey's testimony comports with the record.  Ivy's testimony was straightforward, direct, and believable.  In contrast, Petitioner's contentions that Ivy told him the state charge would be dismissed after he entered a plea in the federal case and that Petitioner told Ivy to file a notice of appeal are neither credible nor supported by the evidence.  For all of the foregoing reasons, the Court concludes that Petitioner did not ask Ivy to file a notice of appeal.  Accordingly, Petitioner's claim that counsel rendered ineffective assistance by failing to file an appeal after being told to do so is denied.

**B.      *Ineffective Assistance Based on Breach of Plea Agreement and Breach of Plea Agreement***

Petitioner asserts in claim one that counsel rendered ineffective assistance by failing to object to the Government's breach of the plea agreement.  In support of his claim, Petitioner contends Ivy and AUSA Boggs told him prior to his plea that AUSA Boggs "would contact the state and have them . . . drop the firearm offense" arising out of the same conduct charged in Petitioner's federal criminal case.  (Doc. No. 10 ¶ 1.)  Petitioner maintains that he was "mislead [sic] by both counsel and the government breaching the plea agreement, by not having [the state charge] dropped."  (Doc. No. 1 at 21.)  Petitioner asserts that Ivy coerced him into pleading guilty based on his advice that the Government would have the pending state charge dropped.  (Doc. No. 10 ¶ 8.)  Additionally, it appears that Petitioner is also raising a substantive claim that the Government breached the plea agreement based on Petitioner's statements at the evidentiary hearings.

As discussed previously, to prevail on a claim of ineffective assistance of counsel Petitioner must establish both deficient performance by counsel and prejudice resulting from the deficient performance. *Strickland*, 466 U.S. at 678-88. The prejudice requirement of the *Strickland* inquiry is modified when the claim is a challenge to a guilty plea based on ineffective assistance. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To satisfy the prejudice requirement in such claims, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Petitioner's claim of ineffective assistance of counsel is refuted by the record. During the plea hearing, the following colloquy occurred:

> The Court: That's fine. I'm asking you whether this written Plea Agreement that you have in front of you contains every promise and representation that you're relying upon in making your decision about whether or not you should enter a guilty plea?

> The Defendant: Yes, sir.

> The Court: All right. You're not relying on anything that is outside of this written document in making your decision here today, are you, sir?

> The Defendant: No, sir.

> The Court: All right. There's a few provisions of the written Plea Agreement that I'd like to review with you, sir. All right. First of all, on page eleven, under subsection (b)(6), you'll see a paragraph there that's entitled Middle District of Florida Agreement. *What's important for you to understand about this aspect of the Plea Agreement is that it provides that the agreement is solely between you and the U.S. Attorney's Office for the Middle District of Florida, and therefore it's not binding on any other state,*

-12-

> *local or federal prosecuting authority; and they could, if they decided to do so, bring charges against you for the same conduct at issue in this case. Do you understand?*

The Defendant: So you -- what you saying is, like, that this agreement is only for. . .

The Court: *It's only between you and the U.S. Attorney's Office for the Middle District of Florida. So, therefore, although it binds the U.S. Attorney's Office for the Middle District of Florida, it doesn't bind any other local, state or federal prosecuting authority; do you understand?*

The Defendant: *Right, because one of the counts, I still have pending as a state count.*

The Court: Okay.

Mr. Boggs: I've discussed that with Mr. Ivy. I didn't realize that it was still pending. We sent a letter to the State Attorney's Office asking them to cede jurisdiction over to us. In my experience, that request has never been denied, and I certainly will send the letter in this case. I thought it had already been *nol prossed* in the state. I expect it will be. *But it is true, as you say, if the state, for whatever reason, decided that it wanted to prosecute that offense, they could do so.*

The Court: *All right. You understand that, sir?*

The Defendant: *Yes, sir.*

(Criminal Case Doc. No. 80 at 12-13) (emphasis added). Thus, contrary to Petitioner's assertions, prior to entering his plea Petitioner was advised that it was within the discretion of the state as to whether to prosecute Petitioner on the pending state charge. Petitioner affirmed that he understood this. Petitioner's representations constitute "a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Despite

being aware that his state charge remained pending and that the state could still prosecute him on that charge, Petitioner chose to enter a plea of guilty in this case. Thus, Petitioner has failed to demonstrate that absent counsel's purported advice concerning Petitioner's pending state charge, a reasonable probability exists that he would not have entered the plea and proceeded to trial. Accordingly, this portion of claim one is denied.

Likewise, Petitioner has not established that the Government breached the plea agreement or that the plea should be invalidated even if a breach may have occurred. "The Government is bound by any material promises it makes to a defendant as part of a plea agreement that induces the defendant to plead guilty." *United States v. Taylor*, 77 F.3d 368, 370 (11th Cir. 1996) (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). Moreover, "'[w]hether the government violated the agreement is judged according to the defendant's reasonable understanding at the time he entered his plea.'" *Id.* (quoting *United States v. Boatner*, 966 F.2d 1575, 1578 (11th Cir. 1992)). Finally, a valid appeal waiver provision does not bar a claim that the Government breached the plea agreement. *See United States v. Padilla,* 404 F. App'x 339, 340-41 n.1 (11th Cir. 2010) ("A sentence-appeal waiver in a plea agreement does not waive the right to appeal a breach of the plea agreement.").

As evidenced by the excerpt from the plea colloquy *supra,* Petitioner affirmed that the written plea agreement contained every promise and representation that Petitioner was

relying on in making his decision to plead guilty and that he was not relying on anything outside of plea agreement.  (Criminal Case Doc. No. 80 at 12.)  The plea agreement did not provide that the Government would ensure that the state charge against Petitioner would be dropped.  Instead, the plea agreement indicated that the Office of the United States Attorney General for the Middle District of Florida would bring Petitioner's cooperation to the attention of the state prosecutor.  (Criminal Case Doc. No. 45 at 11.)

There is no evidence that the Government failed to fulfill this provision of the plea agreement.  Although AUSA Boggs told the Court at the evidentiary hearings that he did not speak with the state prosecutor regarding Petitioner's plea, he indicated that someone else within his office may have done so.  Moreover, the Government presented evidence establishing that the state prosecutor had been advised that Petitioner had entered a plea in the federal case before Petitioner entered his plea in the state court case.  In fact, Petitioner himself testified that he told the state prosecutor about his plea in the federal court and that the state prosecutor indicated that he knew about the federal case and still chose to prosecute Petitioner in the state court proceeding.  Given that the state prosecutor knew that Petitioner had entered a plea in the federal court case, any issue of whether a representative of the United States Attorney's Office notified the state attorney is moot.

Furthermore, the unrefuted evidence shows that  Petitioner chose to enter a plea of guilty in the state court and implicitly, if not explicitly, directed his state defense attorney not to pursue contacting AUSA Boggs regarding his federal plea.  In other words, even assuming that the Government did not notify the state prosecutor of Petitioner's plea in his

federal case, a finding not made by this Court, Petitioner has not demonstrated any resulting prejudice as he waived any possible breach by his actions.  Thus, no relief is warranted as to Petitioner's claim of breach of the plea agreement.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1.      Petitioner's motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is **DENIED**.

2.      The Clerk of the Court shall enter judgment accordingly and is directed to close this case.

3.      The Clerk of the Court is directed to file a copy of this Order in criminal case number 6:08-cr-247-Orl-19GJK and to terminate the amended motion to vacate, set aside, or correct an illegal sentence pursuant to 28 U.S.C. § 2255 (Criminal Case Doc. No. 77) pending in that case.

4.      This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Petitioner has failed to make a substantial showing of the denial of a constitutional right.[2]  Accordingly, a Certificate of Appealability is **DENIED** in this case.

---

[2]Pursuant to the *Rules Governing Section 2255 Proceedings for the United States District Court*, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2255 Proceedings, Rule 11, 28 U.S.C. foll. § 2255.

(continued...)

**DONE AND ORDERED** in Orlando, Florida, this _30th____ day of November, 2011.



PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies to:
Tramaine Anton Hibbert
Counsel of Record

_____

(...continued)